## SHOLLENBERGER *versus* BRINTON.*

CERTIFICATE from *Nisi Prius.*

This was a bill by William Shollenberger against Mary M. Brinton. Mary M. Brinton conveyed a lot of ground in Philadelphia to John McDowell, Jr., reserving a yearly ground-rent of $211.50, *lawful silver money of the United States of America.* The ground-rent deed contained also the proviso, "That if the said John McDowell, Jr., his heirs or assigns, shall and do at any time hereafter pay or cause to be paid to the said Mary M. Brinton, her heirs or assigns, the sum of *three thousand five hundred and twenty-five dollars, lawful money as aforesaid,* and the arrearages of the said yearly rent to the time of such payment, then the same shall for ever thereafter cease and be extinguished, and the covenant for payment thereof shall become void."

John McDowell, Jr., subsequently conveyed the ground to William Shollenberger, the complainant, who, on the 28th day of January 1863, tendered to the said Mary M. Brinton $3525, in the legal tender notes of the United States (commonly called greenbacks), and a deed of release prepared at the cost of the complainant, and demanded that she execute the extinguishment of said ground-rent, which she declined to do.

The bill prayed that the said Mary M. Brinton be decreed specifically to perform the conditions in said deed, and that she be decreed to extinguish, release and for ever quit claim to such ground-rent, upon complainant paying to her the sum of $3525, and such arrearages of rent as were due upon the same at the time of the tender.

The defendant demurred to the bill for the following cause:—

That the deed recited said ground-rent as reserved and payable *in lawful silver money of the United States of America,* and

---

* I am indebted to the Hon. F. C. BREWSTER for the report of this case.— P. F. S.

the redemption *in like lawful silver money*, and that it nowhere appeared in said bill that the complainant had tendered to pay the sums named in lawful *silver* money of the United States of America.

It was agreed, in a case stated for the opinion of the court, that the tender was made in the notes of the United States of America, issued under the authority of the Act of Congress of February 25th 1862, commonly called "legal-tender notes," and in no other kind of money.

The demurrer was argued before Agnew, J., who delivered the following opinion, overruling the demurrer:—

"This is a demurrer to the complainant's bill, brought for specific performance, to compel the defendant to execute a release and extinguishment of a ground-rent.

"The defendant sold to John McDowell, whose title complainant owns, a lot in Philadelphia upon a ground-rent of $211.50, payable half-yearly in 'lawful *silver money* of the United States of America.' The deed contains the following clause of redemption:

"'Provided always, nevertheless, that if the said John McDowell, or his heirs or assigns, shall and do at any time hereafter pay or cause to be paid unto the said Mary M. Brinton, her heirs or assigns, the sum of $3525, *lawful money as aforesaid*, and the arrearages of said yearly rent to the time of such payment, then the same shall for ever thereafter cease and be extinguished, and the covenant for the payment thereof shall become void, and thereupon the said Mary M. Brinton, her heirs and assigns, shall and will, at the proper costs and charges in the law of the said grantee, his heirs or assigns, seal and execute a sufficient release and discharge of the said yearly rent, hereby reserved, to the said John McDowell and his heirs and assigns for ever, anything hereinbefore contained to the contrary thereof in anywise notwithstanding.'

"The complainant tendered to the defendant the sum required to extinguish the ground-rent in *legal-tender* notes of the United States, which the defendant declined to accept, and the point raised by the demurrer is, that the tender was insufficient, because not made in current silver money of the United States.

"The question of the constitutionality of the Legal Tender Act was not raised in the argument, and the case rested on the grounds that the subject of payment was not a *debt*, but an *estate* subject to redemption only on stipulated terms, and that the owner of the rent only bargained that the owner of the land *might buy it off* upon fixed terms.

"I think neither of these positions is correct. The sum which was agreed to be paid in extinguishment of the rent is not an estate, when the owner of the land elects to pay it. The mistake is in confounding the value of the interest or estate which the

owner of the ground-rent has in the ground-rent, with the price or · sum to be paid to extinguish it. Unquestionably the interest of the ground-rent owner is really subject to descent, to execution and to alienation as real estate. But the money which the purchaser of the land agreed to pay, is the price or consideration of the estate of the ground-rent owner paid to extinguish it.

"What was the transaction? The ground-rent owner was the owner of the land. He agreed to sell it to the purchaser for an alternative consideration, to wit:—The interest of the price, $211.50, payable annually for ever if the purchaser choose so to pay; or when he elects, the price itself, $3525. The consideration is therefore $211.50 annually, or $3525 when the purchaser chooses so to pay it. When the deed was made the case then stood thus:—The grantee became vested with a freehold of inheritance in the *land*, and the grantor with an incorporeal hereditament in the rent, *subject* by the terms of the conveyance itself (not a new bargain) to be divested by the payment of the price in the alternative form after election.

"Thus a simple analysis of the transaction shows that the purchaser, when he elects to pay the principal, does no more than pay the price set upon the property by the terms of the original bargain, and that at the moment when he makes his election to cease paying the annual price and pay the principal, he has made it a debt, that is, a specific sum of money, which, by the deed, he owes and agrees to pay when he elects to do so.

"What he pays is not an estate, but it is that which he pays *for* the estate. It is money, it is specific and certain, and it is that which he has agreed by express terms to pay to extinguish the estate of the ground-rent owner. What is this but a debt? In what does it differ from any other contract where an option or election is given to the payer? Suppose the subject of sale to be a chattel instead of land, and the purchaser agrees to pay the annual interest of the price for ever, or, at his option, to pay the principal. Does the want of power in the vendor to compel him to make his election to pay the principal change the character of the principal as a debt when he does elect to pay it? How is this case any different? If the ground-rent owner cannot enforce payment of the principal, it is not because the money when offered to be paid is not of the nature of a debt, but because he has given his grantee an option to pay in either way. It is his deed or contract which prevents the exaction, not the nature of the sum to be paid. It is a sum of money arising in contract, it is the price of an estate, it is paid to extinguish it, and it is certain and fixed. If this be not a debt, what is?

"The other objection is not more sound, that the owner of the ground-rent only bargained that he *would* sell on stipulated terms. The idea, as I understand it, is this:—That by the terms of this

[Shollenberger *v*. Brinton.]

clause the owner of the ground-rent offers to sell the ground-rent to the grantee upon his paying to the former so many dollars in *silver* money, and that until the grantee comes to his terms he is not bound by the offer; but it is an unaccepted proposition until the grantee comes up to his terms of silver money.　This is fallacious.　The redemption clause is not a contract for a future sale of the ground-rent, but is a provision for the cessation and extinguishment of the ground-rent when the stipulated price, the sum already agreed upon for the purchase, shall be paid.　It is a proviso that when the sum is paid, with arrears of the yearly rent, ' then the same (to wit, yearly rent) shall for ever thereafter *cease* and be *extinguished*, and the *covenant* for the payment thereof shall *become void*.'　It was, therefore, not an offer to sell, but the sale had been made, the deed was its execution, and the clauses merely provided for the alternative mode of payment.　This will be the more manifest from the nature of the deed.　It conveys the land for the nominal consideration of one dollar, a present valuable consideration introduced to give the deed the legal effect of a feoffment or deed with livery of seisin.　But the real consideration is the covenant of the grantee to pay the annual interest or rent; or, when he so elects, the stipulated price in full; and the grantor *presently* covenants in the deed that the payment when made shall extinguish the *covenant* to pay rent.　The instrument is operative at the time of its date, and needs no new act of the grantor to give it effect.

"It is because the grantee so provided and covenanted in the deed itself that extinguishment takes place.　It is true, the deed provides for a release and discharge of the yearly rent; but this, it is manifest, was but to preserve the evidence, and provide for a clean record, so that the registry which shows the charge should also show the discharge.　The operative act is the payment. There can be no doubt that payment in itself discharges the rent, and if the ground-rent owner should die the next moment, the evidence of the payment would be all-sufficient for the owner of the land; and the reason is, that this is the provision of the deed itself.　On payment being made, the language is: ' Then the same (rent) shall for ever thereafter cease and become extinguished.'

"It follows from these considerations that the demurrer is not well taken.　It must be overruled, and the defendant is ordered to answer the bill within thirty days from the filing of the order."

A decree was accordingly entered on the case stated in favour of complainant; the defendant appealed, and the case was certified to the Supreme Court in banc.

The following assignment of errors was filed:—

The court erred:

Shollenberger *v.* Brinton.]

1. In not entering judgment in favour of the defendant upon the special demurrer filed by her.

2. In holding that the complainant was not obliged to aver or prove the payment or tender of lawful silver money of the United States to entitle him to a release and extinguishment of the ground-rent.

3. In holding that under the terms and conditions of the ground rent deed the complainant was entitled to a release and extinguishment of said rent upon payment or tender of the amount of the principal and arrears of the ground-rent in notes of the United States, of the character and description set out in the case stated filed.

4. In making a final decree in favour of the complainant, and in not making a decree therein in favour of the defendant, dismissing complainant's bill with costs.

*Joseph B. Townsend* and *Meredith,* for appellant (waiving an argument on the question of the constitutional right of Congress to issue the notes directed by the Act of the 25th of February 1862, upon the terms and with the effect stated in that act), contended that the nature of the estate of the defendant in the ground-rent and of the plaintiff in the land out of which it is reserved and of the contract or covenants between them, as contained in the ground-rent deed, was of that character that the defendant was entitled to have the specific consideration or equivalent called for by the deed before she could be compelled to part with her inheritance in the ground-rent, and, if these notes be legal tender for any purpose, they are not for the purpose of paying off this ground-rent. It is a cardinal rule in all proceedings in equity to compel specific performance of a contract, that the complainant must specifically fulfil or tender to fulfil all his part of the contract: Brightly's Equity, pp. 187, 188, 189; Fisher *v.* Worrall, 5 W. & S. 485; Benedict *v.* Lynch, 1 Johns. Chan. Rep. 364; Greenlee *v.* Greenlee, 10 Harris 235; Chess's Appeal, 4 Barr 52.

A specific performance is of grace and not of right; and unless when controlled by arbitrary enactment, a chancellor never decrees specific performance of a contract, except one which is a source of mutual obligation and mutual remedy: Wilson *v.* Clarke, 1 W. & S. 555; Bodine *v.* Glading, 9 Harris 53.

Even though the writing or contract be clear, if any circumstances be shown outside of the contract making it inequitable to interpose, a court of equity will not interfere. In all cases of doubt the court will withhold its aid, for it requires much less strength of case on the part of the defendant to resist than, on the part of the plaintiff, to maintain a bill to enforce specific performance: Dalzell *v.* Crawford, 1 Parsons 45; Farley *v.* Stokes,

[Shollenberger *v.* Brinton.]

Id. 429; Hawk *v.* Greensweig, 2 Barr 298; Brawdy *v.* Brawdy, 7 Id. 158.

The contract in this case lacks mutuality. It is never in the power of the owner of the ground-rent to compel the owner of the land to redeem it; the right of redemption is wholly optional with the owner of the land, and to be exercised *at his volition only*, provided he will strictly comply with the conditions upon which the deed stipulates that he shall be entitled to it.

The rent, until actual redemption, remains realty, susceptible of devise, partition, encumbrance and alienation, as other real estate: Ingersoll *v.* Sergeant, 1 Whart. 337; Franciscus *v.* Reigart, 4 Watts 98; Kenege *v.* Elliott, 9 Id. 262; Skerrett *v.* Burd, 1 Whart. 246; Bosler *v.* Kuhn, 8 W. & S. 183; Irwin *v.* Bank of United States, 1 Barr 353; Juvenal *v.* Patterson, 10 Id. 282; Mullock *v.* Souder, 5 W. & S. 198.

If there be any difference in the actual value between the kind of money stipulated for in the deed and the kind tendered, it cannot be inequitable for the appellant to decline receiving it.

The lawful silver dollars of the United States, stipulated for in the deed, are the coined metallic money of the weight and standard established by the Acts of Congress.

The Act of Congress makes these notes legal tender in payment of debts, but the principal sum for which a ground-rent can be redeemed is not a debt in any aspect. Payment can never be enforced by the owner of the rent. The rent as reserved is in perpetuity and so remains for ever, unless the tenant choose to avail himself of the privilege of buying it off.

Congress did not assume to fulfil impossibilities or to declare that the paper was actual coined dollars, or in other words, the very thing which on its face it promises the government shall pay to the holder.

*F. Carroll Brewster*, for appellee.—The Act of Congress February 25th 1862 is constitutional. The power is expressly conferred on Congress by the Constitution "to raise and support armies," and "to provide for and maintain a navy." To accomplish these ends, money would be absolutely essential.

Congress has authority to make all laws which shall be necessary and proper for "carrying into execution the foregoing powers."

In McCullough *v.* Maryland, 4 Wheat. 316, and other cases, it was settled that with Congress is "the choice of means," and all the "discretion with respect to the means.".

The sixth enumeration of the powers of Congress confers authority "to coin money."

The word "coin" is not confined in its application to the stamping of pieces of metal.

[Shollenberger *v.* Brinton.]

History tells us of the coining of *leather* in the days of Seneca. The expression in Seneca is " *corium formâ publica percussum.*" The test is the thing done, not the substance on which it is done.

This ground-rent can be extinguished other than by payment or tender of *silver* dollars. In Meyer *v.* Roosevelt, Leg. Int. Oct. 16th 1863, Judge Wright says, "A treasury-note of the denomination of ten dollars is *legally as valuable, for the purposes of money,* as a coined eagle."

The case of The Metropolitan Bank and Shoe and Leather Bank, Respondents, *v.* Henry H. Vandyke, Appellant, Lewis H. Meyer, Appellant, *v.* James J. Roosevelt, Respondent, Leg. Int. Nov. 27th 1863, per Mr. Justice Davies, is also to the same point.

C. J. Marshall, in Faw *v.* Marsteller, 2 Cranch 20, said, "The position, then, that the value of the money at the time when the consideration for which it was to be paid was received is the standard by which the contract is to be measured, is not a correct one." In Pong *v.* De Linsey *et al.,* 1 Dyer 82 a, "certain money was current in England in the place of sterlings, called "pollards," viz., two pollards for one sterling, and defendant tendered a moiety of a debt on a bond for £24 sterling, and the tender was held good. He relied also on a case in Davies's Reports, p. 28, as analogous to this. Queen Elizabeth, in order to pay the royal army for *suppressing* the *rebellion* of Tyrone, caused a great quantity of mixed money to be coined. Before this proclamation was issued, when the pure coin of England was current in the kingdom, one Brett became bound to pay one Gilbert " £100 *sterling, current* and *lawful* money of England." At the appointed time he made a tender of £100 in this mixed money. It was held that the " *mixed money, being established in this kingdom before the day of payment, may well be tendered in discharge of the said obligation, and the obligee is bound to accept it,*" and " it is sufficient if he be always ready to pay the mixed money according to the rate for which they were *current at the time of the tender.*"

If the covenantor complied with the covenants of his deed, he is entitled to specific performance. The tender of the principal sum named in the deed, with arrearages, was made in the legal-tender notes of the United States. Was the tender good? The question is therefore reduced to two points:—

1. Whether the word " silver" in the covenant is a mere superfluous designation.

2. Whether a ground-rent is a *debt* within the meaning of the Act of Congress creating the legal-tender notes.

The appellant bases her argument on wrong premises. She starts out with the idea that this is a covenant to pay this rent and extinguish the same *in silver dollars of the United States,* whilst the covenant for the rent is " *the sum of two hundred and*

[Shollenberger v. Brinton.]

*eleven dollars and fifty cents, lawful silver money of the United States."*

All *money* of the United States government is lawful money. These notes are a legal tender in lieu of silver and gold, and made equal to specie by the sovereign power of the land.

The contract is not for so much metal. "Lawful silver money" is only a designation; "dollars of money" is the condition.

The appellant cannot claim that her rent is $211.50, and then say because a silver dollar is worth two dollars of any other article or commodity, that therefore she is to receive $423 for her rent. Her rent must be a certainty. It cannot depend on any subsequent valuation to settle it. If it lose its certainty the rent is gone, and the contract changed. If appellant is entitled to a greater amount of lawful money than $3525 for her principal, then her rent would increase in the same proportion.

2. Is this principal sum a debt within the meaning of the Act of Congress?

"A payment cannot be made of any thing before it is a debt:" Evans's Pothier on Obligations, Art. 4, p. 510.

A debt in its unlimited sense signifies any performance or payment which one can rightfully claim from another, be it money, services or things. It is not a contract, but the result of a contract: Mackeldey's Roman Law, vol. 2, p. 121; Stephen's Commentaries 187; 3 Metcalf's Rep. 522; 1 Burrill 450.

But it is said that this is an estate; and so it is, but with a defeasance. The extinguishment is not a separate contract from the creation of the rent. It is the same contract with the defeasance. The argument of the appellant that there is no mutuality is not sustained, for a defeasance cannot be without mutuality.

It is said that these notes are mere promises to pay; that is true. It is not designed to give any forced or unnatural construction to these notes, nor to transmute them to silver, but Congress *has* made them a legal tender in payment of debts, and it is submitted that this whole contract or covenant is within the meaning and intent of the Act of Congress: Meyer v. Roosevelt, Leg. Int. Oct. 16th 1863; Dowmans v. Dowmans, 1 Wash. Virg. Rep. 26; Pough v. De Linsey, 1 Dyer 82 A; Year Books, 2 Hen. VII., p. 56; Barrington v. Potter, Dyer 81; Bac. Abr., *Tender*, B 2, Vol. 7, 325; U. S. v. Robertson, 5 Peters 644; James v. Steele, 9 Bart. 482; Conkey v. Hart, 3 Kern 22; Mason v. Hull, 12 Wheat. 370; People v. Supervisors of Orange, 17 N. Y. 235; Faw v. Marsteller, 2 Cranch 20.

The appellee therefore submitted:—

1. That the law favours the unfettering of estates. That it is the policy of the law to render them as easy of transmission and sale, and as free from encumbrance, as possible.

2 P. F. SMITH—2

[Shollenberger *v.* Brinton.]

2. That it is the right of every landowner to free his estate by the tender of the amount of the encumbrance in " *lawful money,*" and that no construction of the deed is to be favoured which throws impediments in his way.

3. That it is the constitutional right of Congress " to coin money and regulate the value thereof." That, having acted upon this grant, there is no limitation to their power, and they can raise or lower its standard at pleasure. That at all times their constitutional acts should be carried into effect as the " supreme law of the land," and that especially in times like the present, no construction of the law should be favoured which is calculated to embarrass the government or depreciate its currency.

4. That Congress having declared that the notes tendered by the complainant are " lawful money," neither the defendant nor the court can say that the tender was not in " lawful money." And if " *lawful* money," then it fulfilled all the requirements of the law and of this deed, which could never exact more than $3525 in " lawful money."

5. That the addition of the word " silver" is a mere description of the lawful money, and binds neither party. It means simply a *kind* of lawful money in which the tender *may* be made, not a *prohibition* of other forms of money ; not a law that there shall be *no other* kind of lawful money for the purposes of this deed. If it means that—then,

1. It is absolutely void, for no party can exact and' no party can consent to a stipulation impugning the power of the law-making branch of the government.

2. It would lead us, as already demonstrated, to most absurd results.