## Weist and Myers *versus* Grant.

1. Weist, without inspection, bought from Hickcox and Coryell, the owners, silver mines, upon their representation that they would yield a certain amount; the contract to be void if Weist should not approve the report of a selected assayer. After the report, Weist paid a large part of the purchase-money; on working the mines by Weist, the product was only one-third of the representations. *Held*, that Weist was liable for the remainder of the purchase-money, unless the misrepresentation was intentional.

2. Weist having bargained for the report of an assayer before being bound by the contract, and having acted on it, and there being no collusion or fraud, he was estopped from alleging misrepresentation in the inception of the contract.

3. Weist was garnishee in a foreign attachment against Hickcox: in the scire facias on the attachment, there could be a recovery without first ascertaining the specific interest of Hickcox.

4. Primâ facie the interest of the vendors was equal.

February 19th 1872. Before AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 157, to July Term 1871.

This was a scire facias issued June 26th 1869, by Fanny Grant against John Weist and Andrew W. Myers, garnishees of George Hickcox. The plaintiff recovered in the foreign attachment a judgment against Hickcox for $3836.82.

The scire facias was tried, April 4th 1871, before Hare, P. J.

The plaintiff gave in evidence an agreement, executed in Philadelphia on the 26th of June 1867, "between Dr. George Coryell of Colorado, &c., herein acting in his own right, as well as attorney in fact for George Hickcox and William M. Power, both of Colorado aforesaid, duly constituted, &c., of the one part, and John Weist and Andrew W. Myers, both of the city of Philadelphia, aforesaid, of the other part." By the agreement it was contracted to sell to Weist and Myers, for the consideration of $80,000, certain land in Colorado territory, containing the Franklin and five other silver lodes, which were named in the agreement, with appertenances specified; $10,000 to be paid within ninety days after a satisfactory report from Professor Bruckner, assayer, &c., and the remainder at subsequent times as set out in the agreement; the last payment, being $35,000, to be paid in one year after Bruckner's report, which was to be made as soon as practicable to "Weist and Myers, which report is to be subject to their approval, and if not satisfactory, or approved of by them, then this agreement to be void and of no effect, otherwise to be and remain in full force, and to be consummated."

They gave in evidence also a report, from Bruckner and two other assayers, giving a somewhat detailed description of the two lodes, but not expressing a decided opinion as to the value of the

21 P. F. SMITH—7

lodes. Weist, garnishee, was called by plaintiff, and testified that they had received the report in less than a year after the date of the agreement, and that they had paid between $30,000 and $40,000 of the purchase-money. The plaintiffs then rested.

The garnishees called Weist, who testified that in the negotiation Coryell showed reports from different persons, which stated that the lodes contained about $140 of gold and silver per ton, and represented that the product would be greater than the reports : that in other respects the lodes were of great value.

On cross-examination the witness said that he had been in the mining business for four or five years; that he had not seen the land before he purchased, but that Myers had.

The garnishees then gave in evidence the reports which had been exhibited by Coryell at the time of the negotiation, and also evidence that the ore from the lodes as ascertained by assays would yield not more than between $40 and $50 per ton, and that in other respects the lodes were of inferior value.

The plaintiff read the answers of the garnishees to the interrogatories in the case; in these they said that they had paid $54,000 on the contract, and that there were still due $26,000; that no settlement had been made or account stated between the vendors; that their interest was undivided, and garnishees did not know the amount due to Hickcox, and claimed that by reason of the misrepresentations made by Coryell, the vendors had been overpaid; that Coryell and Hickcox had taken out large quantities of ore before the contract and knew what the yield would be; that by works erected since their purchase, it had been demonstrated that the ore would not reach $50 per ton.

The garnishees requested the court to charge :

1. That if the jury believe a misrepresentation of a material fact was made by George Hickcox, or his agent, of an occult quality of the mineral properties purchased by defendants, and that said misrepresentation was the inducement to purchase, they must find for the defendant.

2. That if the jury find that the defendants were induced to purchase the mineral properties in question, from George Hickcox, through an assertion of the vendor or his agent of a very material fact, which turned out to be false, and as to which the vendees had no means of obtaining correct information, that the defendants are entitled in this action to a deduction from the price agreed to be paid, to the amount of the difference between the value of what they received, and what they thought they purchased.

3. That the plaintiff having shown that if any money is due from defendants as garnishees to George Hickcox, that it is due to said Hickcox and third parties jointly, and nothing appearing to show the state of the partnership accounts as between the partners, or the solvency of the partnership, so as to enable the jury to

[Weist v. Grant.]

decide that any precise or certain sum is due the said Hickcox individually, this action must fail.

The court charged: "The material question in this case is, whether the original vendors were guilty of fraud in the sale? and it is alleged on the part of the garnishees that the representations as to the extent and value of the ore were false.

"If they were false, and the vendors knew it, it might be a defence, as for instance, if there was a representation that the ore was worth $150 per ton, and it was only worth $50 per ton.

"To constitute a defence on the ground of fraud, it must not only appear that the statements made were not true, but that the party who is charged with the fraud knew them to be false.

"I do not know that Prof. Bruckner's report should stand against the evidence that the ores were not worth so much according to the assay.

"If Prof. Bruckner could be honestly deceived, the vendors might be, although it is difficult to believe they could have been deceived to that extent. The report is a circumstance in the case, but not conclusive. If the vendors intended to mislead, it is not an answer that another labored under an honest misapprehension on the same points.

"The question in this case is for the jury. If the vendors falsely and knowingly deceived the defendants as to a material point, then your verdict should be for the defendant; but if the transaction was a fair one, and the defendants were not misled, then your verdict should be for the plaintiff.

"I decline to charge as requested in the fourth point of the defendants, and the other points are sufficiently answered in my charge."

The verdict was for the plaintiff for $4086.21.

The garnishees took a writ of error, and in several specifications assigned the charge of the court for error.

*B. F. Fisher* and *D. W. Sellers*, for plaintiffs in error.—The quality of the ore was occult; if therefore there was mispresentation in regard to it, the vendor was responsible, although unaware of the truth: Fisher *v.* Worrall, 5 W. & S. 478; Watts *v.* Cummins, 9 P. F. Smith 84; Miles *v.* Stevens, 3 Barr 21; Geiger *v.* Cook, 3 W. & S. 266; Gibson *v.* The Union Rolling Mill Company, 3 Watts 37. The vendees did not get what they bought, although it was worth one-third of what was represented: Pennock *v.* Tilford, 5 Harris 456. There could be no recovery until it was ascertained whether Hickcox had an interest, and this could be only by knowing the state of accounts between him and his fellows: Strock *v.* Little, 9 Wright 416; Knerr *v.* Hoffman, 15 P. F. Smith 129; Winston *v.* Ewing, 1 Ala. 129; Fisk *v.* Herrick, 6 Mass. 371; Upham *v.* Naylor, 9 Id. 490; Haws *v.* Waltham, 18 Pick.

[Weist *v,* Grant.]

451; Snyder *v.* Gorham, 1 Gallison (R. I.) 367 ; Church *v.* Knox, 2 Conn. 514 ; Johnson *v.* King, 6 Humphreys (Tenn.) 233; Kingley *v.* Miss. Fire Co., 14 Mo. 465 ; Town *v.* Leech, 32 Vt. 747.

*J. M. Pile* and *T. J. Ashton,* for defendant in error.—Actual fraud and misrepresentation are for the jury : McKibbin *v.* Martin, 14 P. F. Smith 352 ; Burr *v.* Todd, 5 Wright 207 ; Huntzinger *v.* Harper, 8 Id. 204.   Reconveyance should have been tendered : Pearsoll *v.* Chapin, 8 Wright 9.   The means of knowledge were accessible to vendors : Kintzing *v.* McElrath, 5 Barr 467. The vendors not being partners, but tenants in common, and their shares ascertained and distinct, foreign attachment would lie.   In a *partnership* in a single transaction assumpsit will lie : Knerr *v.* Hoffman, 15 P. F. Smith 128 ; Brubaker *v.* Robinson, 3 Penna. Rep. 295 ; Galbreath *v.* Moore, 2 Watts 86 ; Girard Ins. Co. *v.* Field, 9 Wright 129 ; McCarty *v.* Emlen, 2 Dallas 277 ; s. c. 2 Yeates 190 ; Morgan *v.* Watmough, 5 Wharton 125 ; Caignett *v.* Gilbaud, 2 Yeates 35 ; Childs *v.* Digby, 12 Harris 23 ; Norcross *v.* Benton, 2 Wright 217.   The jury had the right to presume for the purposes of this case that the vendors were equal as well as joint owners : Hoyt *v.* Doughty, 4 Sandford 462 ; Ohl *v.* Eagle Ins. Co., 4 Mason 390.

The opinion of the court was delivered, February 26th 1872, by AGNEW, J.—The verdict of the jury establishes that there was no intentional misrepresentation of the yield or richness of the silver-mines, sold by George Coryell, on behalf of himself and Hickcox and Power to Weist and Myers.   This leaves but two questions in the case that require notice.   They alleged that Coryell before the sale represented that the ore from those mines would yield from $133 to $145, per ton, and that Weist and Myers bought on the faith of this representation in Philadelphia, the mines being in Colorado territory, and out of reach before closing the contract.   By actual assay the ore is found to yield only about fifty dollars a ton ; and the garnishees, Weist and Myers, therefore allege a failure of consideration, and claim a right to defend, on the ground of a material false representation of the richness of the mines.   But the case is not like Fisher *v.* Worrall, 5 W. & S. 478, and others of that class, in which the misrepresentation of an occult quantity of land is held to be a defence when the vendee buys on the faith of the representation and not on his own judgment.   In this case by the very terms of the agreement, it appears that Weist and Myers did not buy on the faith of any representation, but provided for a prospect and examination of all the mines, by a competent assayer named in the article, as to their availability, richness, duration and con-

[Weist *v.* Grant.]

dition; and also if having the requisite machinery to reduce or work two or more tons of the ore; and whether he has machinery or not to so reduce the ore, to report to Weist and Myers; the report to be subject to their approval, and if not satisfactory nor approved by them, the agreement to be void. Weist and Myers, therefore, did not rely on the representations of the vendors, but took the most available means to protect themselves against the hazard of a distant purchase. Professor Bruckner, the assayer, made the examination and reported, and on the report, Weist and Myers confirmed the purchase, and paid a large part of the purchase-money. Nothing short of collusion and fraud in the report of the assayer could afford any ground of defence, and this is taken away by the verdict, the question of actual fraud having been submitted to the jury upon the whole case and found against them. The vendees bargained for the report of a competent assayer before they should be bound by the contract. They have had it and acted upon it, and their mouths are now closed against an allegation of misrepresentation in the inception of the contract.

The other question is as to the proportionate interest of George Hickcox, one of the three vendees, in the purchase-money. It is contended that without proof of his actual interest in the mines, no verdict could be rendered for a specific sum, as his interest was unknown and might be less than this sum. But there is no evidence that Coryell, Hickcox and Powers were mere partners, subject to a settlement among themselves. The largest inferences to be drawn from the contract and the answers of the garnishees in evidence would be that they were joint-tenants and sold as such. The answers admit an unpaid residue of purchase-money of $26,000, while the verdict is for $4086.21, only. The fair presumption from the fact, that, in the sale Hickcox is equally as well as jointly bound for the covenants on part of the vendors, is, that his interest in the subject of the contract is equal; otherwise he would have restricted his liability to a minor proportion. There is nothing in the agreement or the answers to rebut this presumption. Though only a primâ facie, and indeed a weak presumption, yet it is sufficient to stand until something is proved to overturn it. This rebutting evidence would naturally come from Hickcox, the defendant, and the garnishees themselves, and not producing it, they cannot complain of the inference of equality of interest as drawn from their acts.

The judgment is therefore affirmed.